## A. W. DIBRELL v. P. D. SMITH.

1. VENDOR'S LIEN.—Such lien depends upon the facts; a debt which is for the purchase-money for land sold remains a lien, unless waived expressly, or by the vendor taking other security, regardless of the form, or how the evidence of the debt may be changed.

2. SAME.—A release or satisfaction of such note would destroy the lien for the debt of which the note was evidence.

3. VENDOR'S LIEN—CHANGE OF SECURITIES—PRACTICE.—St. Clair bought a tract of land at administrator's sale, and executed his note, with Dibrell and Erskine as sureties, and also executed a mortgage on the land, to secure the purchase-money. St. Clair was unable to pay, and, by agreement among the parties, St. Clair deeded the land to his sureties, and the vendor released the mortgage, Dibrell paying half the purchase-money, and Erskine executing his note for the remaining half. Suit was brought on Erskine's note, and against him and Dibrell, seeking to enforce the vendor's lien against Erskine's half interest in the land. Pending the suit, Dibrell bought, at execution sale, Erskine's half, and set up his purchase as against the plaintiff. Before the decree, Erskine died, and his administrator was made a party: *Held*—

    1. The vendor's lien was properly enforced as against Erskine's interest, and against Dibrell's claim under the execution sale.

    2. That it was error to direct that the foreclosure sale be made by the administrator of Erskine.

    3. The decree should have ordered the sale by the sheriff, and established the deficit as a claim against the estate.

APPEAL from Comal. Tried below before the Hon. I. N. Everett.

Suit was originally brought in Guadalupe District Court, and the venue was changed to Comal county. This is the third appeal in this case. It was before the Military Supreme Court in 1868, (Smith v. Dibrell, 31 Tex., 239,) and the judgment reversed. A second appeal was heard in 1873, and the judgment appealed from reversed. (Dibrell v. Smith, 40 Tex., 447.) A third trial was had October 17, 1874, before the court, without a jury.

The case in 40 Texas gives a sufficient history of the pleadings and object of the suit.

On the trial below the plaintiff read in evidence (1) the deed from Smith, as administrator, &c., to J. Q. St. Clair, for the tract of land described in the pleadings; (2) the mortgage of St. Clair, for same land, to Smith, to secure the purchase-money note for $1,082, signed by St. Clair, principal, and Dibrell and Erskine as sureties, of same date with deed (January 31, 1857); (3) deed from St. Clair to Erskine and Dibrell for same land, of date 25th of February, 1858; (4) note, of date March 4, 1858, for $606, by A. N. Erskine to P. A. Smith, guardian, &c.; (4) release of said mortgage, signed by P. D. Smith, guardian, &c., of date March 4, 1858.

Erskine being dead, and his administrator having become a party to the suit, the testimony given by Erskine at a former trial of the case was read, and is as follows:

"We, Erskine and Dibrell, became sureties on the note of St. Clair for the purchase-money for the land. Finding that St. Clair could not pay for the land, we proposed to Smith, that if he would give us time we would give our note for the purchase-money in place of St. Clair's note, and take a title from St. Clair, and thus relieve St. Clair from liability; and to clear the land of incumbrance, as of record, so that it could more readily be disposed of, Smith agreed to cancel the mortgage which St. Clair had given upon the land. There was nothing said about waiving the vendor's lien, or in reference to it in any way. I did not understand that the vendor's lien was released. When we executed the note, there was nothing said about it one way or the other.

"The note sued upon is one of the notes given to Smith for a portion of the purchase-money. Smith supposed, at the time we gave the notes, that they would be paid promptly. Smith was at the time acting as guardian. My undivided interest in the land was sold at sheriff sale, and said Dibrell bought it for twenty-two dollars. Dibrell, before the sale and up to the time it was made, had notice that the note sued upon was unpaid. The land, at the time of the sale, was worth four or five hundred dollars."

Dibrell read sheriff's deed, of date May 1, 1860, which conveyed all Erskine's interest in the land to Dibrell.

It was shown that plaintiff had settled with his wards, the original beneficiaries of the note.

The plaintiff Smith testified: "That he executed the release of the mortgage in evidence, and that he surrendered up the original note given for the purchase-money of the land. He does not know what became of the note; thinks Dibrell tore it up. The note was for about $1,080.

"Dibrell and Erskine agreed to become responsible each for the one-half of the original note given by St. Clair, Dibrell, and Erskine, if he (the plaintiff) would surrender said note and execute a release of the mortgage. Dibrell said, that unless the plaintiff did so he would not pay; and, in order to get the money, witness did release the mortgage, and give up the original note. Dibrell paid witness the one-half, ($606,) according to his promise, and Erskine gave his individual note for the other half of the debt, which he agreed to pay.

"Witness received the original note as guardian of the minor heirs of C. A. Smith, to whose estate the note belonged. The wards are all of age. Witness had paid money to said wards from time to time; they have been paid in full, including the note sued on. Witness considered himself as the interested party plaintiff in this suit, and that the proceeds of it were his own. Witness thought Erskine insolvent when he (witness) released the mortgage; thinks St. Clair also was insolvent."

Judgment for plaintiff for the amount of Erskine's note, subjecting his half interest in the land, and ordering its sale by Erskine's administrator. From this judgment Dibrell appealed.

*John Ireland*, for appellant.—From the opinion of Mr. Justice Reeves, (40 Tex., 243,) in overruling a motion for a rehearing, the court below gave judgment subjecting Dibrell's

land to the payment of the debt sued on. From that judgment Dibrell has appealed. It will be seen that an important point in the testimony, when here before, is wanting now. Smith first testified—or, rather, the statement of facts said—that Dibrell told Smith that the land would still be bound for the debt. On the last trial Smith said this was a mistake, and it does not appear in this record. We think it clear that the mortgaged property and Dibrell were released from all responsibility. (1 Hilliard on Mortgages, 698, 699; Pease v. Kelly, 3 Oregon, 417; Autrey v. Whitmore, 31 Tex., 623; McDonough v. Cross, 40 Tex., 251; Dibrell v. Smith, 40 Tex., 447; Christman v. Wright, 3 Ire. Eq., 549; Botham v. McIntier, 19 Pick., 346; Story on Contracts, 995.)

. It is agreed by all the courts that the mortgage by St. Clair was released, and that in such a case there is no vendor's lien. When Erskine assumed half the debt, could that assumpsit create a lien where none existed? Would not the personal security of Erskine have the opposite effect, on the well-known principle that personal security will work a waiver of the vendor's lien? (Parker v. Sewell, 24 Tex., 239; McDonough v. Cross, 40 Tex., 251.)

Erskine, however, did not buy from Smith. He bought from St. Clair after (as shown in Erskine's testimony) the arrangement had been made to allow St. Clair to sell; in other words, to destroy Smith's lien, so St. Clair might sell relieved of the lien.

*W. E. Goodrich*, for appellee.—The judgment appealed from by Dibrell, is not a personal judgment against him, he being affected only by its decreeing the sale of the land to satisfy the note for $606.20 given by Erskine. From this judgment Dibrell appeals.

When this case was first before this court, it was held that the guardian could not release the lien; and this was not denied on the next trial of the case. (Smith v. Dibrell, 31 Tex., 242; Dibrell v. Smith, 40 Tex., 447.)

St. Clair's deed to Erskine and Dibrell was made February 25, 1858, and the release of the mortgage was March 4, 1858.

If Erskine, after the release, had conveyed for valuable consideration to one ignorant of the purchase-money not having been paid, then the case of Autrey *v.* Whitmore, 31 Tex., 623, cited by appellant, would have been pertinent; but Dibrell was fully cognizant of all the facts, and in no sense an innocent purchaser.

That the taking by the vendor of land, acting in his own interest, of a new security for the purchase-money, may be a waiver of his lien, is not denied; but this does not apply to guardians, administrators, &c., acting in their representative capacity, whose duties are fixed by the statutes. (Smith *v.* Dibrell, 31 Tex., 242.)

But there is no new security in this case. Erskine alone gave the new note in lieu of the one to which he, St. Clair, and Dibrell were all parties. Can a part, taken from the whole, be held as new security, or as a good consideration?

Smith says that Dibrell would not pay him the half of the original note, unless he (Smith) would give up the old note and execute the release, and in order to get half of the money due his wards, he complied with Dibrell's demand.

It seems that Dibrell and Erskine agreed with St. Clair to take this land, and each pay one-half of the note; Dibrell does pay his half, trusting to Erskine to pay the other half; but having bought on May 1, 1860, at sheriff's sale, for twenty-two dollars, on a judgment in his own favor, Erskine's interest in this land, he tries to hold the land, claiming that the lien in favor of the heirs had been waived.

Appellant, in his brief, says that Erskine bought of St. Clair after the arrangement had been made allowing him to sell. It was not necessary for St. Clair to get permission, and in fact his deed to Dibrell and Erskine antedates the so-called release more than a week.

It was aimed, in the lower court, to make the judgment

rendered conform to the opinion of this court, as delivered by Mr. Justice Reeves, in overruling the motion for a new hearing.    (Dibrell v. Smith, 40 Tex., 447.)

MOORE, ASSOCIATE JUSTICE.—The entire argument of counsel for appellant, and the only ground upon which we are asked to reverse the judgment in this case, rests upon an erroneous supposition, that the vendor's lien which appellee seeks to enforce is an incident to the original sale of the land by Parris Smith, administrator of Charles A. Smith, deceased, to John D. St. Clair. If, in fact, there ever existed any such lien as a security for the purchase-money agreed to be paid by St. Clair for the land, it could hardly be supposed to have survived the discharge and cancellation of the note for security, of which alone it had any vitality or existence. By the subsequent arrangement by and between appellee, Peter D. Smith, St. Clair, Erskine, and appellant Dibrell, the sale of the land to St. Clair was cancelled, and resale of it was made by appellee to Dibrell and Erskine, or, rather, as I am inclined to regard the transaction, St. Clair, with the consent of appellee, sold the land to Dibrell and Erskine, in consideration of their satisfying and discharging his note to Parris Smith. And in consummation of this arrangement, whether it should be regarded as a sale by appellee or St. Clair, Dibrell paid for the one-half of the land conveyed to him by St. Clair, and Erskine executed to appellee the note upon which this suit is brought for his half.

Unquestionably, if this note had been given by Erskine to St. Clair, from whom he got his deed, it not being otherwise secured, equity would have implied a lien upon the land for which it was given as a security for its payment, whether the note from St. Clair to Parris Smith had been paid or not; and if it had been transferred by St. Clair to appellee in payment of his note, his right to the lien could not be denied. Certainly, the fact that, by previous agreement and understanding among all parties in any way interested in the mat-

ter, the note, instead of being given to St. Clair and transferred to appellee, was given directly to him, will not, as between the parties to the transaction and those cognizant of its nature and purpose, change its character, or operate as a waiver or disclaimer of the lien, which equity ordinarily infers in the absence of other security.

Dibrell, however, was in no way interested in Erskine's half of the land, or bound by the note given in payment for it; and whether it was secured by a vendor's, or any other character of lien, was a matter of no consequence to him when the transaction was consummated. Appellee's failure, therefore, to prove that he admitted that the land would be bound for all the unpaid purchase-money, does not tend to show that the lien was waived. Erskine, whose interest in the land alone has been held subject to the lien, testified that, although nothing was said in reference to it at the time, he did not understand that the vendor's lien was waived. And he also testified that Dibrell, when he subsequently purchased his (Erskine's) interest in the land at sheriff's sale for the inconsiderable sum of twenty-two dollars, knew that the purchase-money for which he (Erskine) had given his note to appellee was still unpaid. In view of these facts, it cannot, we think, be denied that appellee was entitled to a decree against appellant for the sale of the half interest in the land bought by Erskine, for the purchase-price of which the note sued upon was given.

But while we are of the opinion that appellee was entitled to a judgment for the sale of the land, we think it was error to direct its sale by Erskine's administrator; and for this error, the judgment must be reversed and reformed, at the cost of appellee in this court.

Until the purchase-money was paid, Erskine's interest in the land was in the nature of an equity of redemption. This interest, however, was subject to sale under an execution. All his title and interest in the land was consequently divested out of him by the sheriff's sale, and passed to and vested

in Dibrell.    Hence there was at the time of his (Erskine's)
death no title or estate in the land remaining in him which
could descend to his heirs, or vest in his estate for purposes
of administration.    The court, therefore, erred in decreeing
a sale of the land for the satisfaction of the vendor's lien by
Erskine's administrator.    The judgment should have ordered
its sale by the sheriff of the county in which it is situated,
(Paschal's Dig., art. 1480,) with direction to apply the pro-
ceeds to the payment of the judgment, and if there should be
an overplus to pay the same to appellant; but should the
amount realized from the sale prove to be insufficient to
discharge the judgment, then that the remainder should be
certified to the County Court, to be paid by the estate of
Erskine in due course of administration.

For this error, the judgment is reversed and reformed as
above indicated, at the cost in this court of appellee.

REVERSED AND REFORMED.