### LOVING v. CLARK et al.    (No. 1758.)

(Court of Civil Appeals of Texas. Amarillo. March 2, 1921.)

**1. Husband and wife &#8660;276(6)—Will held not to give executor right to dispose of community property of testator's wife.**

Where testator's wife died before him, his will, which recognized the community of his deceased wife and directed that the interest which had not been set aside should be set over to the children of the marriage, did not give the testator's executor power to sell the community property of the deceased wife, although authorizing the executor to dispose of other property.

**2. Husband and wife &#8660;276(6) — Burden on purchaser to show that community was subject to debts.**

Where the executor of a testator, who was authorized to sell property, sold the community of the estate of a deceased wife, which the testator directed to be set over to the children of the marriage, the purchaser has the burden of showing that the community was subject to debts.

**3. Husband and wife &#8660;276(3)—Granting of administration on husband's estate does not confer jurisdiction over estate of deceased wife.**

The granting of administration on husband's estate does not confer jurisdiction over the community estate of the husband's deceased wife.

---

&#8660;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Husband and wife ⚖═276(6) — An order, confirming report of executor who sold community property of testator's deceased wife, held not to show sales for debts.**

An order, confirming the report of the executor of a testator which showed a sale of property belonging to the community of the testator's deceased wife, *held* merely to show that the proceeds of the sale were used to pay off indebtedness against farm lands which passed to children of the marriage under testator's will, and not a sale to pay community debts.

**5. Husband and wife ⚖═276(6)—No presumption that community of deceased wife passed under deed by husband's executor.**

Where the executor of a husband under power of sale disposed of lands partly belonging to the community of the deceased wife, and the report of the executor, who was also guardian of children of the marriage, indicated that sale was made under power of sale of the husband's will, there is no presumption that the deceased wife's community estate passed; the will merely authorizing the sale of the testator's property and the deed referring to the will.

**6. Guardian and ward ⚖═41—Statute forbidding sale by personal representative without order of court applies to guardian.**

Rev. St. 1911, art. 3480, providing that no sale of any property belonging to an estate shall be made by an executor or administrator without an order of the court authorizing the same, applies to guardianship, and, unless such order is granted in case of guardian desiring to sell property belonging to a ward, the sale is void.

**7. Husband and wife ⚖═276(6) — Community of deceased wife held not to pass under sale by husband's executor.**

Where testator authorized the executor to sell city property and reinvest the proceeds in farm lands for the benefit of his two infant daughters and the executor, who was also appointed guardian, without any order of the court sold lands belonging partly to the community estate of the testator's deceased wife, which estate the testator had recognized, and the deed recited the sale was made by virtue of the powers under the will, the community of the deceased wife did not pass, although the report of the executor and guardian, referring to the sale, was confirmed, and the proceeds devoted to paying liens on the farm lands of the children.

**8. Executors and administrators ⚖═149 — Heirs must account for proceeds received in order to set aside conveyance of executors.**

Where the executor of a husband sold city property and used the proceeds to discharge liens on farm lands belonging to the testator's two children, to whom such property was devised, the children cannot, though the sale and deed were invalid, recover the city property without accounting for the proceeds.

Appeal from District Court, Montague County; C. R. Pearman, Judge.

Action by Una and Dell Clark against C. D. Loving. From a judgment for plaintiffs,

defendant appeals, and plaintiffs assign cross-errors. Affirmed.

W. T. Russell, of Montague, for appellant. Spencer & Jameson and W. H. Hunt, all of Montague, for appellees.

HUFF, C. J. Lot 3, block 16, in the town of Nocona, was purchased by S. D. Clark, September 22, 1892. Agnes B. Clark was then the wife of S. D. Clark, and the trial court finds, and the evidence supports the finding, that the lot was the community property of Clark and his then wife, Agnes B. Clark. The appellees, Una and Dell Clark, are the only children, the fruits of that marriage, and the only heirs of Agnes B. Clark at the time of her death, which occurred in October, 1900. S. D. Clark died January 15, 1904. The record shows after the death of his first wife he married the second time. Agnes B. Clark died intestate. S. D. Clark left a will. The third clause of the will directs that the executor pay to his daughters, Una and Dell Clark, the community interest of their mother, Agnes B. Clark, deceased, out of his present estate holdings as near as could be figured out and approximated at the time of her death. "The community interest of said Agnes B. Clark, my former wife, being kept by me with my share of said community estate, undivided." By the fourth clause he gave the appellees, his two daughters, one-third of his personal property, and directed the executor to convert their share in the personal property into real estate. By the fifth clause he gave to Una and Dell Clark "all my real estate" to be held by them each one-half, "and I direct that my executors see that the titles to all lands bought by him for them and devised to them, either under this item or item 4th, be perfect and good in them and that all deeds and conveyances to them be so worded and written that they, nor either of them, can sell or convey said land but that same may descend after their death to their heirs respectively, providing they may partition same between themselves." The sixth clause makes provision for the second wife, giving her a one-third interest in his personal property. The seventh clause makes provision for continuing a partnership with his brother, Robert B. Clark, in a business in the town of Nocona. The eighth clause:

"I further direct that my executor shall, as early as convenient, invest all the funds of my estate, belonging to my said daughters, Una and Dell Clark, in good real estate, farm lands preferably, and hereby authorize him to sell any city real estate that belongs to my estate and invest the proceeds in farm lands for my said daughters on said terms and provisions as hereinbefore directed."

The ninth and tenth clauses are not involved in this case. The eleventh clause:

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"I hereby appoint Robert B. Clark, my brother, to be executor of my last will and testament, whose duty it shall be to perform and carry out the provisions of this will."

He also appointed his father for the purpose only of collecting insurance due the two daughters, but the brother was appointed for all other purposes. There was no clause constituting R. B. Clark an independent executor without bond, and the record shows that the will was probated and R. B. Clark was appointed executor, giving bond September 6, 1904. At the same term of court it appears R. B. Clark was appointed guardian of the persons and estate of Una and Dell Clark, and the lot in question, No. 3, block 16, was inventoried as belonging to their estate. On the 18th day of March, 1905, R. B. Clark, as executor, conveyed a one-half interest in lot 3 to J. G. Clark, for the recited consideration of $375 cash. And on the 28th of March, 1905, J. G. Clark conveyed the half interest in the lot to R. B. Clark, for a recited consideration of $375, evidenced by a note. On the 12th day of September, 1908, R. B. Clark and wife, Mollie Clark, conveyed to C. D. Loving, appellant, an undivided half interest in the lot for a recited consideration of $1,375. On the same day R. B. Clark, as executor, executed a deed to C. D. Loving, to all of lot 3, for a recited consideration of $2,750. This deed recites that the will of S. D. Clark was probated; that R. B. Clark was appointed executor, and that the will authorized and empowered the executor to sell and convey real estate, either at public or private sale as to him should seem best, and to make deed, and as such executor by virtue of the power and authority of the will, and the payment of the sum, sell and convey lot 3, block 16, to Loving. The deed was signed by R. B. Clark, executor. The appellees, after they reached 14 years of age, made selection of a guardian, and asked that R. B. Clark be removed as such. This application was made at the March term, 1909, of the county court, and was thereafter granted. At the June term, 1909, R. B. Clark, as executor, filed his account, which occupies several pages of the record. On the 7th day of October, 1909, the account was, by order of the court, approved as the final account of the executor and in the order it recites:

"It further appearing to the court that on the 12th day of September, 1908, by authority given him in sections Nos. 5 and 8 of the will of S. D. Clark, deceased, R. B. Clark, as executor in the will of S. D. Clark, deceased, sold and conveyed by deed to C. D. Loving, lot 3, in block 16, as laid down and described on the official plat of the town of Nocona, Tex., for $2,750. That said money was applied to the payment of indebtedness against the farm lands given Una and Dell Clark, in said will, in compliance with directions therein contained. That said heirs have received the full benefit thereof. It is therefore ordered, adjudged, and decreed by the court that the said sale to the said C. D. Loving be, and the same is hereby, confirmed, and said sale in every way approved and said executor and his bondsmen discharged from this trust."

R. B. Clark, also as guardian of the person and estate of appellees, at the same term presented his account as guardian, which was approved. In the report as guardian it was reported by R. B. Clark that lot 3 had been sold to pay off an indebtedness against the estate of his wards and to clear certain farm lands, and that the money was so applied, and they have received the full benefit thereof. "Said sale was made to C. D. Loving under authority given me in sections Nos. 5 and 8 in the will of C. D. Clark, deceased, as his executor." Clark reported in his final account in the executor administration the transaction substantially as he did in his guardian's report. The trial court finds there was no order of sale of the lot made by the probate court in either the administration under the will or in the guardianship. The facts show there was none. In fact, it would appear that Clark, after qualifying as executor and guardian, making out and returning an inventory of the estate, administered both estates without direction from the probate court, and made no report except upon final settlement. The appellees, Una and Dell Clark, brought this action in the form of trespass to try title against Loving for lot 3. The appellant Loving answered by general denial and plea of not guilty, and specially answered that he held a valid title from R. B. Clark, executor and guardian, respectively, of the estate of S. D. Clark and the estate of plaintiffs; that he paid full value therefor, bought the same in good faith, and that the deed to him was fully approved by the court, and stands as an adjudicated matter, and it is not subject to collateral attack, as sought in this suit; and that plaintiffs received the full benefit of the proceeds of said property. He set out and pleaded the taxes and insurance that he had paid on the property and some other expenses, and further alleged:

"In the event the plaintiff should recover the building of him or any part thereof, he is entitled to an adjustment of equities between him and the plaintiff; besides, he paid for the said property the sum of $2,750, and has been out the use and revenues of his money in the event the court finds that the plaintiffs are entitled to recover the property, which said money was worth to him 10 per cent. per annum, and, further, since he has had possession of said building he has received rents therefrom of $2,-677.60, all of which he says should be considered and the equities adjusted between the plaintiffs and this defendant, in the event of their recovery as aforesaid; and, further, having bought the said property in good faith and,

having paid $2,750 therefor, plaintiffs, before they can recover, must refund to defendant said sum."

The plaintiffs answered by supplemental petition, pleading that the property was the community property of S. D. Clark and his wife, Agnes D. Clark, and claimed an interest of one-half by reason thereof, through their mother. The case was heard before the court without a jury, who rendered judgment for the appellees for a one-half undivided interest in the property and for partition, and ordered the same sold and a division made of the proceeds. There was an agreement entered at the trial, as follows:

"It is agreed that C. D. Loving bought the property in controversy in good faith, but not as an innocent purchaser, and paid the consideration therefor shown in the deed to him, and that the rents during the time he has owned it is $3,250.60, and that he has paid for taxes, insurance, and improvements $1,019.64."

The trial court also found that Loving paid the recited consideration, and that about $800 of this amount was used in paying off indebtedness against some farm lands belonging to the estate of S. D. Clark and the minor heirs.

The appellant, by assignments of error, attacks the action of the court in overruling exceptions to the pleadings, and also to the judgment of the court, on the ground that this was a collateral attack on the judgment of a probate court, which had jurisdiction of the matter, and for the reason the action was improperly brought. It is not our purpose to review the assignments as set out and presented, but we believe the case may properly be disposed of in considering the questions presented by the record, without reference to the assignments specifically.

[1] By the terms of the will S. D. Clark did not attempt to devise any property or interest except his own and made no attempt to devise the interest in the property belonging to his wife, the mother of the appellees. By the terms of the will under the third clause, he expressly recognized the community interest of his deceased wife, and directed that the interest so held be set over to the children. It is therefore clear he never intended this interest to be sold by the executor under the powers of the will. Slavin v. Greever, 209 S. W. 479 (4–5).

[2-5] It is insisted that in the administration of property under a will the executor may pay the community debts out of community property, and that if the community estate is sold to pay community debts the interest of the deceased spouse will pass under the sale. If such sale may be made, the burden, as we understand, was on Loving to show it was sold to pay community debts. Upon the death of the mother, her interest passed to the children. The granting of letters of administration on the husband's estate did not confer jurisdiction over the estate of the deceased wife. They, of course, took their mother's interest subject to the payment of the community debts. This property is not shown to have been sold to pay community debts. The wife had been dead four years when administration was granted. There appears to have been no debts against the lot; in fact, there was no attempt to show a sale to pay community debts. At most, the order simply shows the sale was made to pay off indebtedness against farm lands which passed to the appellees under the father's will. Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; Moody v. Butler, 63 Tex. 210; Allen v. Ramey, 226 S. W. 489; Waterman v. Robins (Tex. Com.) 206 S. W. 825, cited by appellant, does not hold to the contrary. The deed, the final report of the executor, and the order of approval of that report, show that the sale was not made by virtue of an order of sale, but by powers granted under the will, clauses 5 and 8. If it took an order of sale by the court, the very title under which the appellant claims shows the deed was not by virtue of any such order, but by the terms of the will. Both the report in the administration under the will and under the guardianship show the sale was made under the will. Appellant's deed shows he has no title from the guardian, and hence he only got that which the executor could sell, and no more. There is no presumption, conclusive or otherwise, under this record, that the mother's estate passed to appellant, but the record negatives any such conveyance. In fact, the will did not authorize the executor to pay debts due by Agnes Clark on account of the community estate, but if he could sell he could only sell to reinvest in farm lands for the benefit of the children. It may be under the fifth clause that if there was due on farm lands a debt creating a lien thereon, it was the duty of the executor to remove it, and he could sell city property for that purpose. We do not undertake to so hold the will authorized, but merely suggest the matter. It is quite apparent the interest inherited was not sold to pay a community debt of Agnes Clark.

[6-7] We think article 3480, R. C. S., providing that no sale of any property belonging to an estate shall be made by an executor or administrator without an order of the court authorizing the same, applies to guardianship. We think such order should be granted in case a guardian desires to sell property belonging to his ward. See Browne v. Fidelity, etc., 98 Tex. 55, 80 S. W. 593; Schaeffer v. Williams, 208 S. W. 220 (3). So, even if there was a deed from Clark as guardian, we doubt not but an order would be required to make a valid sale. It has been held in this state an administrator's sale, in the absence of an order of the pro-

bate court, authorizing the sale, is void, and may be attacked in a collateral proceeding. Ball v. Collins, 5 S. W. 622; Collins v. Ball, 82 Tex. 259, 17 S. W. 614, 27 Am. St. Rep. 877; Terrell v. Martin, 64 Tex. 121; Riley v. Poole, 5 Tex. Civ. App. 346, 24 S. W. 85; O'Connor v. Vineyard, 43 S. W. 55; Matula v. Freytag, 101 Tex. 357, 107 S. W. 536; Berry v. Hindman, 61 Tex. Civ. App. 291, 129 S. W. 1181; Webb v. Reynolds, 207 S. W. 914; Schaeffer v. Williams, 208 S. W. at page 223. It has been held, where the administrator had no power to make the sale of land when the probate court undertook to approve the sale, the decree of the probate court gave no validity whatever to the deed. It was said:

"To concede to administrators such power would virtually surrender to them the unrestricted management and disposal of the entire property of the estate they represent." Teal v. Terrell, 48 Tex. 509; Todd v. Caldwell, 10 Tex. 241; Hunton v. Nichols, 55 Tex. 217; Fishback v. Page, 17 Tex. Civ. App. 183, 43 S. W. 317; Bartley v. Harris, 70 Tex. 181, 7 S. W. 797.

There can, in our opinion, be no presumption on this record that there was ever a sale of the interest of the appellees in the lot derived by inheritance from their mother's estate, or that the deed of the executor of their father's estate passed title to the half so inherited. The record will not justify any such presumption. Where the record states what was done, it will not be presumed something different was done. How the sale was made and where it was made the record of the probate court shows and the deed to the purchaser recites. It affirmatively shows this half interest was conveyed by an executor; that the will never intrusted to him, and indeed could not. We can indulge in no presumption that it was made under any other decree or order at any time or place, or that any decree for its sale was made by any competent authority to validate it. The mere fact that the sale was reported in an account of final settlement to the court, sitting in the guardianship and the approval of that account and discharge of the guardian, is not sufficient to raise the presumption that the guardian obtained an order to sell the half interest inherited and that the sale was ratified, in the face of the report reciting it was sold under clauses 5 and 8 of the will. We think the trial court was correct in entering judgment for the appellees for an undivided half interest in this lot.

[8] The appellees present a cross-assignment, to the effect that the trial court erred in not giving them the half interest in the lot which they received under their father's will. Under the administration under the will the executor was rightly in possession of that moiety of the lot, and the probate court, through the executor, had jurisdiction of it for the purpose of administration. Although the deed may have been void for want of an order of sale or an order of proper confirmation, it is not now our purpose to determine. The facts and pleadings show an apparent title in the executor. The facts and pleadings show that appellant paid $2,700 for it. It is admitted he acted in good faith in paying the sum, and the court finds that the proceeds so received were applied on indebtedness due on farm lands belonging to the appellees, which they took under the will of their father. The pleadings of the appellant amounted to a plea to be subrogated to the amount so paid before the appellees could recover, and to require them to pay the sum before they recovered the lot. It seems to be the rule in such cases that the heirs could not recover the land without paying or tendering back the money so paid and used for the benefit of the estate. This seems to be the holding in Wilkin v. Ownes, 102 Tex. 199, 114 S. W. 104, 115 S. W. 1174, 117 S. W. 425, 132 Am. St. Rep. 867; Smithwick v. Kelly, 79 Tex. 564, 115 S. W. 486; Millican v. McNeal, 102 Tex. 1189, 114 S. W. 106, 21 L. R. A. (N. S.) 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74; Halsey v. Jones, 86 Tex. 488, 25 S. W. 696. This court recognized this principle in the case of Allen v. Berkmier, 216 S. W. 647. The question of estoppel was applied in that case properly, but the principle of estoppel is not involved in this case. The appellant pleaded in the court below his right of subrogation, and proved his case to that court's satisfaction. The appellees by such plea were called on to pay, or offer to pay, in the trial before they were granted a right of recovery. They did not see proper to make the payment or offer to do so, and we think the trial court properly denied them a recovery upon such failure. He must have ascertained on the trial that such course would be as equitable as to enter up a judgment for the purchase money paid, with interest thereon, and give the appellees time within which to pay it off before they could obtain a recovery for the land. At any rate, the cross-assignment presents the error in no such way as will justify us in reversing the action of the trial court on the pleadings and facts, as here presented.

The judgment will therefore be affirmed.